Bland, Chancellor.
Ordered, that Richard G. Stockett, the petitioner, be, and he is hereby permitted and directed, to deposite any sum of money now in his hands, or which may hereafter come into his hands, as a part of the said trust fund, with the register, to be by him deposited in the Farmers Bank of Maryland to the credit of the case, subject to further order.
The plaintiffs Jones and wife, by their petition, stating that the defendant Stockett had, under this order, paid into court the sum of $1,652 28; and that the executors were perfectly willing that the money already deposited, and which might thereafter be deposited on account of the said trust fund, should be paid over to the plaintiff Samuel, upon his giving bond with approved surety. Whereupon they prayed that the same, together with all the residue of *412 the trust fund, when deposited, might be paid to the petitioner Samuel, on his giving bond with approved surety.
21st September, 1825.
Bland, Chancellor.
-The petition of Samuel Jones of Joshua, and Ann his wife,- has been read and considered. It was my intention, by the order of the 31st of August last, to place the money constituting the legacy to the plaintiff Ann, at once in perfect security, and to give her time to be heaidttb|n the mode of investment, so far as the testator had allowed otJKP range of discretion in that respect. From the language of the Will, it certainly could not have been the intention of the testator' that the legacy he thus gave to his niece should be put into the hands of her husband, upon any terms whatever. But. apart from that manifest intention, Where the profits only, of a legacy are given, as in this instance, to a woman for life, and' the principal in remainder to her children, it might evidently be attended with the most pernicious and ruinous consequences to take the' prifacipal, given to the children in remainder, from the hands of the trüsteés, and place it in the hands of their father. His influence might prevent them from exacting from him their just right during his life; and on his death insolvent, they might feel a great repugriance tb making his securities answer'for the loss they-had sustained by reason of his misfortunes, (a) The good feelings between parent and child, so far from being put in jeopardy, should be sustained and cherished.(b) Therefore, even if this money might be put out upoñ mere personal security, I should deem it improper to place it upon such security y in the hands of the father of those who are to take in remainder. (c) The testator has, however, apparently áwáre of the ill.'consequences of such a disposition of the fund,.expressly declared it to be his .design, that the trustees should retain in their hands the principal sum of $7,000, and put the same out on interest on good security, for the purposes aforesaid.
But, as the annual and punctual payment of the interest payable to Ann, must depend in a great degree upon the form of the investment, I was unwilling to make the selection until the plaintiffs had been heard. The meaning of the phrase 1 good security,’ used by the testator, must be taken in connexion with that indefinite, and perhaps great length of time, during which it is very evident he *413 intended it should continue to he c good security;’ and thus, understanding the testator to mean permanently and durably good security, I feel that my discretion must be limited to a selection among securities of tha't description; that is, government stock, or a mortgage on unincumbered real estate, or good bank stock. But apart from this manifestation of the testator’s intention, it must be recollected, that generally, in cases of this kind, if the trustees were of themselves to put this legacy out on mere personal security, it would be deemed a breach of trust, and they would be held accountable accordingly. (d) The prayer of the plaintiffs cannot be granted; and, therefore, it is. Ordered, that the said petition be, and the same is hereby dismissed with costs.
On the 16th of December, 1825, the defendant Wayman put in his answer, in which he admits the will of his testator; and states, that a provision having been made therein for the testator’s nephew Larkin Shipley, as well as for the plaintiff, it was agreed, that the defendant should take charge of the bequest to the legatee Larkin; and that the other defendant should manage the legacy given to the plaintiff Ann; that a large proportion of the testator’s estate consisted of bonds and notes, some of which, and particularly those deemed doubtful, had been collected, or pressed for payment, leaving such as were-good to stand on interest; considering them as good investments as could be made within the meaning of the testator’s will; that he had made some payments to the plaintiff Ann; and that he had wished to have had the whole of her legacy paid over to her husband as proposed by him; but that the court had determined otherwise.
After which Jones and wife, by their petition, prayed that the investment might be made in stock of the Bank of Westminster.
20th January, 1826.
Bland, Chancellor.—
Ordered, that the trustees Stockett and Wayman, unless cause to the contrary be shewn by them, on or before the fourth day of the next March term, be and they are hereby directed and required to invest the money heretofore brought into this court, in stock of the Bank of Westminster; the said stock to be transferred to, and held by and *414 in the name of the said trustees for the uses, intents and purposes in the proceedings mentioned, and the interest or dividends thereon, as the same may become due and be collected, shall be paid by them unto the said Ann, the wife of the said Samuel, during her natural life; and after her death the said bank stock shall be disposed of and pass as is directed by the last will and testament of the testator. And for the purpose of making such investment, the money will be directed to be paid to the trustees when required, Provided that, a copy of this order, together with a copy of the foregoing petition, be served on the said trustees on or before the twentieth day of February next.
The trustee Stockett, on the 16th of March, 1826, reported that he had received another sum of $1,900, and requested to be authorized to invest that- sum also; and said, that he had no interest adverse to that of the plaintiff’s; and therefore was willing that the investment should be made as proposed, if the court thought the fund secure.
18i/i March, 1826.
Bland, Chancellor.
Ordered, that the said trustees be and they are hereby authorized and directed to invest the additional sum of about $1,900 received lately by one of them, as stated, in stock of the Bank of Westminster, upon the terms and as prescribed by the order of the 20th of January last. And no cause having been shewn against the execution of the said order, the same is hereby declared to be absolute; and the said trustees are directed to invest the said sums of money accordingly.
The trustees Stockett and Way man reported that they had, as ordered, purchased stock in the Bank of Westminster at $1 per share above par, that is to say, that they had purchased capital stock to the amount of $3,330 for the sum of $3,552 in money. Which they prayed might be confirmed; and that the moneys deposited in court might be applied accordingly.
20th April, 1826.
Bland, Chancellor.—
Ordered, that the said report be and the same is hereby ratified and confirmed; and the register is directed to draw a check on The Farmers Bank of Maryland for the whole sum of money which has been deposited, or •so much thereof as now remains to the credit of this case, in favour of the said trustees or either of them, or for so much thereof as they or either of them may require for the purpose of its being applied as stated in the said report.
*415 The parties agreed, that the case should be referred to the auditor to state an account of assets, &c. And of the sum due, if any, to the complainants on account of Ann Jones’ annuity. And also submitted to the Chancellor, ‘whether the loss of interest occasioned by the deposite of the moneys brought into court is to be borne by the complainants or the estate ?’ and ‘whether the complainants and defendants, or any of them, are to be allowed costs against the estate ?’
2bth April, 1827.
Bland, Chancellor.
I have examined the proceedings and reflected upon the questions submitted. The plaintiffs by their bill complained, that the defendants had suffered the legacy, the profits of which were given to the plaintiff Ann, to remain in their hands unproductive; whereby the interest, which might otherwise have been accumulated and paid to her, was lost. And prayed, that the trustees might be ordered to make an investment thereof. The defendant Stockett answered, and brought into court a great proportion of the legacy, which was ordered to be deposited as usual, as I have before remarked, for safety, and until the plaintiffs should suggest a mode of investment. Hence, it is evident, that the plaintiffs, in effect, called the money into court; and it was their fault, that it remained here so long unproductive. The trustees being blameless, are therefore not chargeable; and there is no ground upon which these plaintiffs can have the estate taxed, to the prejudice of others, for the purpose of re-imbursing them for a loss occasioned by their own mismanagement or negligence : for even if the trustees had been guilty of any misconduct, the estate could not be charged to make good the loss; (e) and upon the same general principles, neither these trustees nor the estate can be charged with costs, (f)
Whereupon it is Ordered, that the loss of interest occasioned by the deposite of any moneys in this court, pursuant to the order of the 31st of August, 1825, be borne by the complainants; that they pay all costs; and that this case be, and the same is hereby referred to the auditor, with directions to state an account or accounts, in pursuance of the foregoing agreement and of this order.
After which the auditor made up a report, as of the 8th of November, 1827, which he filed on the 15th of the same month, in *416 •which he says that he had stated and therewith returned accounts A and B, between each of the defendants, as an executor, and the estate of Larkin Shipley, deceased; and also account C, between said estate and the complainants Jones and wife; that there was a balance in the hands of Wayman of $51 68, and in the hands of Stockett of $145 95; and that there was due to Jones and wife, on account of interest on their legacy, the sum of $144 01. The auditor further says, that he had allowed Stockett credit for the sum of $50, a fee to counsel retained by him to defend that suit.
The defendant Stockett excepted to the accounts A and B, because in said accounts the defendant Wayman was allowed one-half of the commissions heretofore allowed to this exceptant by the Orphans Court; and he excepted to the account C, because the complainants were thereby allowed interest on their legacy from the time of the death of the testator; whereas interest ought not to be allowed until twelve months thereafter.
21 st February, 1828.
Bland, Chancellor.
The solicitors of the parties having been fully heard, the proceedings were read and considered. It is clear, that the allowance of commissions to executors, in all cases properly brought before an Orphans Court, is a matter as entirely within the jurisdiction of that tribunal as this ; and in so far as it appears, that the matter of commissions had been adjusted and determined by the Orphans Court, as has been done in this instance, the judgment of that tribunal cannot be reviewed or reversed by this court. Therefore the first exception must be sustained.
This legacy, the annual interest and profits of which alone have been given to the plaintiff Ann, during her life, is only payable out of the personal estate of the testator; as to which it has been laid down as a general rule that, as the executors must be allowed a reasonable time to collect the estate, first to satisfy the creditors and then the legatees of the deceased, no such legacy shall carry interest until one year after the death of the testator, (g) And this general rule applies as well to annuities as to mere pecuniary legacies ; for an annuity so given is a legacy, and therefore even if the donation to the plaintiff Ann be regarded as a mere annuity, although with propriety it cannot be in all respects so considered, still it falls under the general character of a legacy, and must in *417 this respect be governed by the same general rule, (h) Where a parent gives a legacy to a child, especially if the child has no other means of support, there, because of the duty of a parent as far as he can to provide a maintenance for his child, the legacy shall carry interest from the death of the testator; (i) and so too in all other cases, if such be the express declaration or manifest intention of the testator, the legacy shall bear interest from his death. But this legacy is given by an uncle to his niece and her children, and there is no intimation by the testator as to the time from which the legacy is to begin to bear interest, and therefore the second exception must also be sustained.
In regard to the fee here proposed to be allowed to the solicitor employed by the trustee, it has been with propriety laid down, that where a trustee, in the fair execution of his trust, has expended money by reasonably and properly taking opinions, and procuring directions that are necessary for the due execution of his trust, he is entitled not only to his costs, but also to his charges and expenses, under the head of just allowances, (j) For these reasons this fee may well be allowed.
Whereupon it is Ordered, that the said exceptions be ruled good, and that the auditor correct his statements accordingly.
On the 10th of March, 1828, the auditor reported, that he had corrected the accounts as ordered; that there was due from Way-man the sum of $183 42; from Stockett $9 79; and that Jones and wife had been overpaid their annuity to the amount of $289 99.
After which, the trustees having brought in and deposited a further sum of money, it was, on the petition of the plaintiffs, ordered to be invested in stock of the Farmers and Mechanics Bank of Frederick County.
On the 15th of November, 1827, Richard G. Stockett and Henry Wayman filed their bill here against Samuel Jones of Joshua, and Ann his wife, and Larkin Shipley, an infant. This bill stated that the late Larkin Shipley, who was, at the time of his death, possessed of and entitled to considerable real and personal estate, by his will gave a legacy to this defendant Ann, and the residue of his estate to this defendant Larkin in the manner therein mentioned, and in- *418 voted into this case the before-mentioned proceedings, under the bill filed by these defendants Jones and wife against these plaintiffs; which case had been referred to the auditor, who had stated several accounts. But that this defendant Larkin, not being a party to those proceedings, or bound thereby, might, at any future period, impeach the correctness of the accounts of these plaintiffs, which had been approved in that case; that, owing to peculiar circumstances, to the localities of the property of the testator, and to the residence of these plaintiffs, and the cestui que trusts, a division of the trust property, and of the duties of these plaintiffs, was desirable, so that the plaintiff Stockett might have the management of the fund invested for the benefit of this defendant Ann, and that the residue of the estate might be confided to the plaintiff Wayman. Whereupon, the bill prayed for such decree as the court might deem just.
On the 24th of December, 1827, Jones and wife filed their answer to this bill, in which they admit the will and proceedings in the suit instituted by them, and say, that, in consequence thereof, a portion of the legacy of $7,000, to wit: the sum of $3,552, or thereabouts, had been brought in and invested, although not expressly asked or required to be brought in; that they were extremely anxious to have the balance brought in and invested, as should be recommended by them, who were alone interested therein; but objected to the separating of the joint trust reposed in the plaintiffs relative to the said bequest; at all events, not until the whole sum should have been invested in a manner satisfactory to these defendants.
On the 26th of March, 1828, the infant defendant Larkin answered by his guardian ad litem, that he was unacquainted with the facts stated in the bill, and prayed the protection of the court.
On the 31st of July, 1828, Larldn Shipley, then an infant, by John Shipley, his guardian and next friend, filed his bill against Richard G. Stockett, Henry Wayman, and Samuel Jones of Joshua, and Ann his wife. This bill states that the late Larldn Shipley made his will,' &c. as before stated, which proceedings in the suit of Jones and wife, against Stockett and Wayman, he exhibited and prayed, might be taken as a part of this his bill; that this plaintiff Larkin was still an infant under the guardianship of his father John Shipley, who was unable out of his own funds, suitably to maintain and educate him; that during a short period, after the de'ath of the testator, the defendants Stockett and Wayman, had advanced to the father and guardian of this plaintiff small sums for his maintenance and education, but *419 have latterly refused to make any further advances, whereby he has been unjustly deprived of the most important benefit intended for film by the testator; that there were sundry debts due to the testator, which the defendants Stockett and Wayman had neglected to sue for and collect; and, amongst others, a debt due from the defendant Stockett, secured by mortgage for $3,186, with interest from the 5th of May, 1811, payable annually; which interest had not been accounted for. Whereupon, the bill prayed that the trustees might be ordered to render a true account of the management of the trust fund; that they might execute the trust; that the residue of the legacy to this defendant Ann might be invested; and the residue of the trust property ascertained and invested in some productive fund, and the rents of the lands, and the interest of the money paid over to the guardian of this plaintiff, for his maintenance and education; that the said trustees might be ordered to collect immediately all debts due to the testator, the interest of which was not punctually paid annually, and be compelled to pay interest on all sums improperly retained in their hands, and to give security for the faithful performance of their trust, and that the plaintiff might have such other relief as the nature of his case might require.
It appears, from a certificate of the register of wills of Anne Arundel county, that John Shipley had, on the 27th of July, 1828, given bond as guardian of Larkin Shipley.
On the 22d of September, 1828, the defendants Jones and wife put in their answer to this bill, and admitted the before-mentioned facts and proceedings, as therein stated, and prayed that the mortgage of the estate of the defendant Stockett might not be considered as a part of the legacy given to them, but that the trustees might be ordered to collect the estate of the testator, and make an investment of the balance of their legacy, giving to them an opportunity of making a suggestion of what might appear to them to be fit and proper objects of investment, they being alone interested in the said investment. And they say that they are willing that the balance of their legacy may be brought in and invested as before directed, although the bringing in of the sum of $3,552, as before stated, into this court, was not only not prayed for by these defendants, but was contrary to their wishes, and occasioned to them a loss of five months interest, as aforesaid; and that the course taken heretofore by this court, without the desire, and to the disadvantage of these defendants; is now prayed for and requested; because it will be more satisfactory and safe, and there will be no probability that the same may not be promptly invested.
*420 On the 20th of October, 1828, these defendants Stockett and Wayman-, by their petition, prayed that this defendant Samuel Jones might be appointed trustee in their place, óf the legacy of $7,000, and-that the amount might be paid into his hands' as such, to be held and disposed of by him, under the direction of the. court.
On the 27th of October, 1829, the defendant Wayman filed his answer, in which he admitted as before the facts, as stated in the previous proceedings, and prayed that those proceedings might be taken as a part, of this, his answer. He then set forth the reasons why some of the debts due to his testator had not been sooner collected, and why some of them still remained to be .got in; and he then further stated, that the plaintiff Larkin was then an infant, about twelve years of age, and lived with his father, who-could no,t require that any portion of the profits of-the estate should be applied to the support of the plaintiff; that, as was intended by the testator, he had placed the plaintiff at a school, when he was old enough, and continued him there until his father took him away; and he. was not then at any school; that the father was not entitled to have any part of the rents and profits of the testator’s estate paid to him for the support of his own child, or while he refused to permit the child to receive the education intended to be given to him by the testator. And, therefore, this defendant had for some time declined to pay any thing to the father, conceiving that, if he were to do so, it would not be applied according to the intention of the testator.
On the 28th of October, 1828, the defendant Stockett put in his answer, in which he prays that the former proceedings may be taken as a part of this, his answér, and admitting the facts which he had therein admitted, says that he is indebted by mortgage, as stated in the bill, and that he is ready and willing to account, &c.
To these answers the plaintiffs put in a general replication, and a commission was issued, under which testimony, was taken and returned, from which it appeared that the pecuniary circumstances of John Shipley, the father of the plaintiff Larkin/ Shipley, were such that he was unable to give to his son even a common’country school education, without labouring under some inconvenience with regard to the rest of his family. After the return of this commission, these four cases were together brought before the court.
5th JVovernber, 1829.
Bland, Chancellor.
These cases standing ready for hearing, and having been argued by the counsel for the complainant Larkin Shipley of John, and the defendants *421 Stockett and Wayman, it is thereupon, with the consent of the parties, Decreed, that these cases be, and they are hereby consolidated, and that the said defendants Richard G. Stockett and Henry Way-man account with the complainants in the premises. It is further Decreed, that these cases, so consolidated, be, and they are hereby-referred to the auditor to state the accounts, and to inquire whether any, and what allowance shall be made, and to whom, for the maintenance and education of the complainant for the time past or to come *, and that he take any testimony adduced by either party-relating to the said matter. It is further Decreed, that the defendants Richard G. Stockett and Henry Wayman make a full and particular report of their proceedings, as trustees under the will of Larkin Shipley, deceased, setting forth what debts due the deceased they have collected, and when; specifying the amount of principal and of interest and costs separately, and what investments they have made of the same, or of any other funds of the deceased in their hands; and that they bring into this court any securities, or evidences of loans, or investments of any of the said funds, and the vouchers for any expenditure heretofore allowed them by this court, or the Orphans Court of Anne Arundel county. And it is further Decreed, that the said Riehard G. Stockett and Henry Wayman, on or before the fifteenth day of November next, file, in this court, a bond or bonds, with surety to be approved by the Chancellor, in the penalty of $20,000, with condition for the faithful discharge of the trusts reposed in them by the will of the said Larkin Shipley, deceased.
After which, the auditor made up a report, as of the 30th of November, 1829, which he filed on the 4th of December following, in which he says that Stockett and Wayman, and the solicitor of Shipley, had appeared before him; that Wayman had filed his report and vouchers, with an agreement signed by the parties, and that Stockett had also filed his report, from all which, and the proceedings, as directed by the decree of the 5th of November, he had stated, first, an account between Wayman and the estate of the testator, from which it appeared that Wayman had in his hands the sum of $3,105 75; second, an account between Stoclcett and the said estate, in which he was charged with the arrearages of interest on his mortgage to the testator to this date; leaving a balance in this executor’s hands of $827 04; third, an account between the said estate and Jones and wife, of their principal legacy and interest thereon. From which, it appears that, on account of the *422 principal legacy of $7,000, the sum of $3,552 has been invested, and the further sum of $822 40 is deposited in court to be invested, leaving a balance of $2,625 60 to be provided for; and that the sum of $97 90 was due to Jones and wife for arrearages of their annuity to this date. The auditor further says, that the parties in their agreement annexed to the report of Wayman have assumed that the sum of $150 per annum would be a reasonable allowance for the maintenance and education of the infant Larkin from the death of the testator; and under the circumstances the auditor was inclined to adopt the estimate. The infant Larkin was admitted to be about twelve years of age, and excluding some small balances due, the amount of which could not be exactly ascertained, the residue of the personal estate, bequeathed to the said Larkin, might be assumed to consist of,
The mortgage debt of Richard G. Stockett, . . $3,186 00
Balance as cash in his hands, ....... 827 04
Do. in the hands of Henry Wayman, . . . 3,105 75
Principal debt due from Elisha Brown, of Samuel, and Samuel Brown, junior, . ... . . . 437 00
7,555 79
Which is charged with the balance of the legacy bequeathed to Mrs. Jones and children, . . 2,625 60
Clear balance,............$4,930 19
The estate bequeathed to Larkin Shipley, including a real estate which then rented for $36, might therefore be safely estimated to yield two hundred and fifty dollars per annum. The auditor moreover says, that it also appeared from the agreement aforesaid, that the said Larkin had been maintained and educated by his father, John Shipley, from April, 1827, to the present time; for which the proper allowance at the rate aforesaid, would be $393 75. And that he had received on account $70; leaving a balance due of $323 75. And in addition to the said balance, the said John Shipley, as next friend, claims to be re-imbursed his legal costs of suit, and also, the sum of $40 as an additional fee to his solicitor, ■ which w!as in the opinion of the auditor a reasonable fee.
The plaintiff, Larkin Shipley, excepted to the account of the trustee Stockett, designated by the auditor as the second account. And also to the auditor’s account, filed on the 15th of November, 1827, in the case of Jones and wife, which by the interlocutory *423 decree of the 5th of November, had been consolidated with this case. 1. Because, in the account filed on the 15th of November, 1827, the expenditures and commissions of the said Stockett, were allowed out of the principal sums received by him; whereas, they ought to have been allowed out of the interest due on his mortgage annually. 2. Because, in the second account, filed on the 4th December, Stockett was charged with simple interest on his mortgage; whereas, the interest being payable annually, ought to have been paid in the discharge of the annuity due to Jones and wife; or, otherwise laid out for the benefit of the estate, which not having been done, compound interest ought to be charged.
28ih January, 1830
Bland, Chancellor.
This case, as consolidated, standing ready for hearing, and having been submitted on the notes of the solicitors of the parties, the proceedings were read and considered.
The original plaintiffs Jones and wife, seem to have taken some very erroneous views of their case, which it may be well here to notice, lest improper inferences should otherwise be deduced from them. They have roundly affirmed, that they alone were interested, in the investment of this legacy of $7,000.
This positive and comprehensive allegation, to say the least of it, could only have proceeded from inattention to the express language of the will under which they claim; by which, it unequivocally appears, that although the testator says, I give to my niece Jinn Shipley, the sum of $7,000; yet he does so, upon the express condition, that no more than ‘the annual interest thereof, shall be paid to her yearly during her natural life.’ By which the testator, in this peculiar and mixed disposition of that amount of his estate, in effect, gave her nothing more than a legacy in nature of an annuity, constituted of only such profits as might be safely derived from $7,000 so disposed of. (k) And consequently the plaintiff Samuel Jones, became entitled only, in right of his wife, to that indefinite annuity, during her life. But the testator directs, that, after her death, the $7,000 shall go to her lawful issue; and therefore, her children by Jones and by any other husband stand alike and next in remainder; and on her leaving no lawful issue, to go over to others. Therefore, so far from the plaintiffs Jones and wife being alone interested in the investment, those in remainder have, by much, the largest interest in the safe disposition of this sum; so that the whole principal may reach them undiminished after the *424 life interest, m its profits, shall have fallen in. But as the plaintiffs Jones and wife, have an interest in its being most profitably disposed of, compatibly with its ultimate safety, it was obviously proper that they should be consulted so far, and to that extent; and they were so heard accordingly. But the court considered itself bound to act as the ex ojfido guardian of the interests of those who are to take in remainder; and who may not be now in existence, or if they are, having no present vested right, could not be made parties to this suit. It is therefore perfectly clear, that Jones and wife are not alone interested in the investment of this sum of money.
The plaintiffs Jones and wife, have also affirmed, that they did not expressly ask or require the $7,000 to be brought in; and that the doing so, was not only not prayed for by them, but was contrary to their wishes, and had occasioned to them a loss of five months’ interest.
But, by their bill, filed about eighteen months after the death of the testator, they complain, that the executors had not paid them all to which they were entitled; that they had suffered the money to remain unproductive in their hands, and had failed to execute their trust — whereupon the bill prayed, that the trustees might account, and especially, that they should be required to put the $7,000 out at interest, so as to have it made productive to the plaintiffs. Jones and wife, thus expressly made it a ground of complaint, that the money remained idle in the hands of the trustees; and also expressly prayed for the direction of the court to the trustees as to the investment. The defendant Stockett, at the very next term after that to which he had been summoned; and as soon as he could have been compelled, or was expected to appear and answer, put in his answer, submitted to account immediately, and to such directions as the court should give in relation to the investment ; and in a few months thereafter, offered to bring into court a large amount applicable to the trusts of the will; and asked for the direction of the court as to the disposition of it; which money was thereupon ordered to be brought in and deposited, subject to further order. The ground of complaint against the trustee Stockett, was therefore, without delay, removed both in word and deed; and a part, at least, of the subject was placed in a condition to have the prayer of the plaintiffs Jones and wife, granted at any moment when they should move, so as to enable the court to act with a due regard to the interests of all concerned.
*425 It has been long, and well settled, that in all cases where property has been vested in a trustee; or placed in his hands; or put under his control for the purpose of securing it for the benefit of any one; or to insure its proper application in any legal way as prescribed by the owrner, that although such trustee may, in almost all cases, if he thinks proper, take upon himself the risk of properly executing the trust without assistance from any quarter; yet he is not absolutely bound to do so. He may in all cases where the nature of the trust is governed by principles of equity, as most commonly happens, ask the direction of a Court of Chancery; and act under the indemnity of its decree; not because such a court is, in itself, considered as a proper or suitable agent for the mere safekeeping, or management of any property; but because where property has been put into a particular course, allowed and regulated only by principles of equity, it is fit and proper, that all who have a beneficial vested interest in it; as well as the agent to whose management it has been confided, should have an opportunity of coming before a tribunal whose peculiar province it is to apply such principles; and have such property so regulated; as well that those who may be then, or thereafter beneficially interested, may sustain no loss, as that the trustee may fall into no mistakes, nor be subjected to any unreasonable responsibility in cases, where the rules of equity, by which his administration must be governed, are complex and of difficult application. And therefore it is, that in all such cases, where a trustee comes before a court of equity, as a plaintiff, or is brought before it as a defendant, and declines to execute the trust without the direction and indemnity of the court, he is held to be so entirely justifiable in thus seeking its protection, that he is never charged with interest or costs; and that all such losses and expenses are directed to be borne by the particular trust fund in regard to which the direction has been required. (l)
Now in the case under consideration, the plaintiffs Jones and wife, had complained, that these trustees had suffered the trust fund to remain in their hands unproductive; and one of the trustees, for they cannot act separately, (m) came in at once, submitted to, *426 and prayed the direction of the court as to the mode of executing the trust — whence it was clear, that no investment could be made until directed by the court; and, as in that interval the trustees could not be charged with interest, no profits, to which alone Jones and wife were entitled, could have been derived from the $7,000. But Jones and wife had themselves complained, that to. suffer the legacy to remain in the hands of the trustees would put at great hazard the principal sum; and consequently, the interest thereon; indeed, it was obvious, that the entire value of their interest in the sum of $7,000, depended altogether upon its being immediately placed in safety; and, as soon thereafter as it might be judiciously done, profitably invested. It therefore clearly followed, that although Jones and wife had not, in so many words, prayed, that the legacy of $7,000 should be brought into court; that nevertheless, it was the necessary result of the actual complaint and prayer of their bill, and most emphatically so after they had been informed by the answer of Stockett, that the trustees declined to execute their trust without the direction and indemnity of the court; for then the bringing of the money into court was the most direct and suitable answer which could have been given to their complaint; and the best step which could have been taken in their behalf, as preparatory to that investment for which they especially prayed. But it would seem from their answer, and the petition of the trustees, filed on the 20th of October, 1828, that they had had other objects in view; and that they had been thwarted in their expectations by the order of the 21st of September, 1825.
The trustee Stockett, in his report in answer to the order of the 20th of January, 1826, seems to have misunderstood the Chancellor ; and to have formed an inadequate notion of his own situation. If by an interest in the matter, he means a pecuniary benefit, it is certain, that he not only has no interest adverse to that of Jones and wife, but none whatever in opposition to any one else. But, as trustee he holds an important office; and he has duties to perform which have a direct bearing as well upon the interests of Jones and wife as upon all others who may take in remainder after them. And consequently, when he comes, or is brought here, in respect of that office and those duties, although he may with propriety claim the direction and indemnity of the court, he cannot be justified in simply casting the whole matter before it, and leaving it to act blindly without information, or upon mere presumptions. He is one of the fiduciaries of this property, chosen by *427 the late owner, as a trustworthy agent for conducting it along a prescribed line; in regard to which the court always expects to hear from him; and, when he stands blameless, hears him with favour and confidence. Therefore, when such a trustee asks the assistance and protection' of the court, in the execution of his trust, it is his duty to give thé court all the information in his power, in order to enable it to give directions most suitable to the true nature of the case, and such as may be alike beneficial to all concerned. (n)
Passing from the consideration of these matters in relation to the legacy given to the plaintiff Ann for life with remainder over, it will be seen, that there has been admitted into this case, as now consolidated, a new plaintiff, Larkin Shipley, another legatee under this same will, claiming a legacy of a similar kind; and which therefore, must, in so far as the two legacies are substantially alike, be governed by the same directions that have been given in relation to the legacy bequeathed to the plaintiff Ann. But in regard to the legacy to the plaintiff Larlcin other questions have arisen, from his infancy and peculiar situation, which call for other and further directions to the trustees as to the disposition, in some respects, of the legatee himself as well as of his legacy.
The directions of the testator are clear and explicit, 'that my said trustees shall have and retain the sole possession and custody of the said estate so given as aforesaid to my said nephew Larkin for the purpose of educating him, and are to rent out the real estate, and put out the money on interest to the best advantage; and pay away the yearly proceeds after his arrival at age to him; but to retain a control over the principal till the objects of this bequest and devise are fully complied with.’ Hence it is manifest, that to these trustees alone have been confided the means of accomplishing the laudable intentions of this testator.
Where a large legacy is given to an infant, and it vests in him immediately, or ultimately at all events, it has been usual to allow an adequate maintenance out of the property so given, and to order it to be paid to the father for that purpose, if he should not be of sufficient ability to maintain his child in a manner suitable to the fortune so given, (o) But in this case the bequest is special and peculiar. The probable or possible misapplication by the father of the proceeds of the property bequeathed to this infant, *428 seems to have been distinctly within the contemplation of the testator. For the trustees are expressly directed to retain the sole possession of the property for the purpose of educating the infant; and there is no provision for his maintenance, except, as an indispensable means of educating him; that is, while he may be at school, and not residing with his father. The distinctly expressed intentions oF the testator are that the infant be educated; that so much of the yearly proceeds of the property as may be necessary are to be applied for that purpose; and that all over and above what may be necessary to attain that object shall be put out on interest to the best advantage, and paid to him after his arrival at age; or, in other words, that if, from any cause, he cannot be educated as desired, he shall have the money which might have been spent in that way.
It is clear, that upon mere common law principles, and by means of a writ of habeas corpus alone, the Chancellor, the judges, or the courts of common law can do little more than relieve any one from illegal restraint, (p) The Chancellor, however, not only has the power, by habeas corpus, to discharge any one from illegal confinement, but he has had delegated to him, as representing the state in its capacity of parens patriae, the power to provide, according to law, for the safety and proper treatment of infants who are unable to take care of themselves, (q) It was only as to the extent of this large parental authority of the court, that I had entertained some doubts. (r) My first impression was, when this case was opened before me, that this court could not, for any purpose however apparently laudable, deprive a father of the care and custody of his infant children; thrown upon him by the law, not for his gratification, but on account of his duties to them, with reference to the public welfare, and place them against his will in the hands of another, (s)
But, upon a more careful investigation, I find, that although it is admitted to be always a delicate thing for the court to interfere against the parental authority, yet that it will do so when it becomes necessary for the safety, protection, and obvious benefit of the infant. The court founding its judgment in such cases, as in those between husband and wife, upon an admission that the tie *429 which binds them together cannot be severed by it; but, yet that a partial or a temporary separation has become necessary for the protection of the weaker or defenceless party; and thus, so far, allowing a stronger policy to over-rule a weaker one. (t) The court will not permit the colour of parental authority to work the ruin of the child, or suffer the child to be sacrificed in any way to the views of the father, (u) And therefore, where the father was infamously profligate and vicious in his habits, and course of conduct; or had attempted to associate his infant children with a lewd woman he had brought into his house; or was guilty of gross ill treatment and cruelty towards them, they were removed from his custody, (w) But the father has no right to the custody of his *430 bastard child; and it may be taken even from its mother, and placed beyond the reach of contamination from her vicious habits. But, as in thus separating parent and child, the only object is to protect the infant from the vices, the maltreatment, or the miscon *431 duct of the parent, every affectionate and tender feeling which should subsist between them will be sustained and cherished as far as practicable; and, for that purpose, they will be allowed to visit each other as often as may be compatible with the safety and good morals of the infant, (x)
Apart, however, from- any positively vicious conduct of a father which might, of itself, afford a sufficient ground for having him separated from his children, a parent cannot be allowed, capriciously, to disappoint the just hopes and expectations of his child. For, although it is, by law, the duty of a parent to maintain his child, yet, where the father was in very indigent circumstances, and the child had had given to him a large fortune, such parent was not allowed to prevent the child from being maintained and educated in such manner‘as his fortune could well afford, and with the advantages he was thus justly entitled to expect; (y) or where the father takes a benefit under the will, by having a legacy given to himself, and also in consideration of a large legacy given to his child, consents that her maintenance and education shall be given up to the management of trustees, (z)
But, although it may be admitted that this jurisdiction of the Court of Chancery, as between parent and child, has been substantially established, yet it cannot be denied that there are many cases in which it would be exceedingly difficult to exercise such authority successfully, and with real advantage to the infant, (a)
In the case under consideration there is no evidence whatever of any vicious habits, or improper treatment of the father towards the legatee, or any other of his children; nor does there appear to have been any such great pecuniary difference made by this legacy between this legatee and his father, as in any respect to call for a check upon the parental authority for the benefit of the infant. The father, we must presume, from the proofs, is an industrious labouring citizen, with a large family about him; who has not the means of bestowing any thing more than what is called a common country school education upon any of them. His son Larkin, the *432 legatee, has had given to him an estate in the nature of an annuity for life, amounting to no more than $250 per annum; from which alone, it is true, that he may be able to obtain a much better education than his father can give him; yet his expectations in life, from such an estate, cannot be presumed to rise so far above those to which he might look as a member of his father’s family, as to suggest the propriety of his being brought up with higher hopes, much less to justify any suppression of his father’s authority over him. Nevertheless, from the terms of this bequest, which, beyond a specified expenditure, is to accumulate until the legatee attains his full age, as well as from the principles of equity by which this case must be governed, if the father refuses to permit these trustees to have the management of his maintenance and education, I can order nothing to be paid to him for those or any other purposes. (b) And as the father has never, in any way, consented to part with his son, in consideration of his being maintained and educated, as directed by the testator, I cannot, on that ground, interfere with the connexion between him and his child. But to whatever school he may be permitted to go, by his father, the trustees will be ordered to pay all expenses, to the extent of the annual income of his legacy, including maintenance for that purpose, if the school should be deemed sufficient, and happens to be too distant for him to reside with his father.
There seems to have been an understanding between these trustees and the father of Larkin, the legatee, that he was, at all events, to be maintained and educated by them; and, under that impression, they have made some advances to the father on that account.
I shall, therefore, on the ground of allowing that to stand which appears to have been well intended, and might have been ordered, affirm the auditor’s report, in this respect, awarding so much, as therein stated, to be paid to the father.
Trustees are never charged, in any way, but on the ground of some fault or neglect. Here no misconduct can be imputed to these trustees; and, therefore, the plaintiff Larkin Shipley’s exceptions to the auditor’s report must be over-ruled.
Whereupon it is Decreed, that the trustees Richard G. Stockett and Henry Wayman without delay invest the residue of the amount of the legacy given to the said Ann Jones in such stocks or way *433 as may be suggested by the said Jones and wife as heretofore allowed; and that the investment be made in the names of the trustees as directed by the order of the 20th of January, 1826. And it is further Decreed, that the trustees Richard G. Stockett and Henry Wayman apply the yearly proceeds of the property devised and bequeathed by the testator Larkin Shipley to his nephew Larkin to his education only so long as he may reside with his father. But, that the trustees, with the permission of the father of the infant Larkin Shipley, without delay, place him at some good grammar school in this state, there to be educated as directed by the testator until the further order of this court; and that the said trustees pay all the expense, as well of his maintenance as of his education at such grammar school, if the said infant should not reside with his father, out of the annual income of his property so as aforesaid given to him. And it is further Decreed, that subject to, and excepting the applications of the yearly proceeds herein before directed, the said trustees without delay invest all the moneys so as aforesaid given unto the said infant Larkin Shipley, as well the principal thereof as all accumulations of interest, dividends, rents, issues and profits arising from the property so devised and bequeathed; which have been or may hereafter be collected, accrue and come to their hands, exclusive of the principal sum secured by the said mortgage executed by the said Richard G. Stockett, which is hereby declared to be an investment for so much, in the stock of The Farmers Bank of Maryland; or in the stock of some one of the banks of the city of Baltimore which have been incorporated by the laws of this state; the said stocks to be transferred unto and held by and in the name of the said trustees or the survivor of them for the uses, intents, and purposes in the will in the proceedings mentioned; the interest or dividends thereon, as the same may become due and be collected, shall be applied as hereinbefore directed. And it is further Decreed, that the reports of the auditor, so far as regards the accounts of the said trustees; and also in so far as the same accords in other respects with this decree be and the same are hereby ratified and confirmed; and so far as the same, with the exceptions thereto, may be at variance with this decree the same are hereby rejected and over-ruled. And it is further Decreed, that all the costs of these suits and proceedings to be taxed by the register, except where such costs have been otherwise directed to be paid by any previous order, be paid by the said trustees, and deducted, in due proportion, from the *434 proceeds of the property of the said legatees, which have or may come to their hands.
On the 22d of February, 1830, the trustee Wayman, by way of report, brought into court the vouchers of three claims which he had held for the estate and legatees of his testator; and declining to give bond, as required by the decree of the 5th of November, 1829, said, that in conformity, as he believed, to the wishes of Jones and wife, recommended in his place Joshua Jones, of Frederick county. And Jones and wife, by their petition, filed on the 9th of March following, expressed their assent to the resignation of the trustee Wayman; and proposed, with the approbation of the court, that Joshua Jones, of Frederick county, should be appointed in his place. To which proposition the solicitor of the trustee Stockett, and of Larldn Shipley, the legatee, by their note in writing, expressed their consent. Upon which the matter was submitted.
20th March, 1830.
Bland, Chancellor.
The petitioner is Samuel Jones of Joshua, that is, as it would seem, the son of this Joshua Jones of Frederick. If that be the case, then it appears, that after having failed to have himself appointed trustee of this legacy of $7,000, and thus directly getting it into his own hands, he now, indirectly, seeks to attain the same object, by having it placed in the hands of his father. In answer to such movements I would say, in the language of one of England’s most extinguished Chancellors, Lord Nottingham, {I like not that a man should be ambitious of a trust when he can get nothing but trouble by it;’ (c) and therefore declare, without any reflection on this Joshua Jones of Frederick, that he shall not, as trustee, meddle with this trust.
It is true, that this court may, for just cause, remove a trustee and appoint another in his place; as where the trustee had become, by reason of age or infirmity, unable to attend to his duties; (d) or where a feme sole trustee had married a foreigner; for, although a feme covert is not incompetent to officiate as a trustee, yet there is much inconvenience in her doing so, and especially when she may, as the wife of a foreigner, be taken out of the state; (e) or. where the trustee had gone abroad to reside; (f) or had absconded on a charge of forgery; (g) or had been guilty of a breach *435 of trust; (h) or even where his co-trustees, there being several others, had a great aversion to act with him. (i) The court may also appoint a new trustee in the place of one who declines to act. (j) But if the deed or will should even expressly clothe a trustee with a discretionary power to appoint a new one, still the court will not permit him to do so, without its sanction; it not being a sufficient answer to say, that the court will take care to prevent the consequences ; the mischief is, in a great measure, done by the appointment ; the necessity of getting back the legal estate. (k) The act of assembly has provided, that if any person shall die, leaving real or personal estate to be sold for any purpose, and shall not, by will, or other instrument of writing, appoint a person as trustee to sell or convey; or the person appointed shall die, or refuse to act, the Chancellor may appoint a trustee for such purpose. (l) But although a trustee, who had accepted the trust, may, by the consent of most of the cestui que trusts, and with the sanction of the court, because of his unwillingness to continue any longer in the office, be discharged, and another appointed in his place; yet the cestui que trusts must be fully apprised of his application to be discontinued. (m) And if it appears that the most interested, or greater part of them are not then in being, or are incompetent to consent, his request will not be gratified, since he cannot, by any act of his own, without communication with his cestui que trusts, denude himself of the character of trustee till he has performed his trust. (n)
Here, however, it does not appear that there is any just cause of complaint against these trustees; and the trustee Wayman, having voluntarily taken upon himself the trust, cannot now be permitted, at his pleasure, to abandon it; and there is no one competent to consent to his discharge on behalf of the infant plaintiff Larldn Shipley and his issue, and thefetne covert Ann Jones and her issue, who are the principal, if not the only cestui que trusts.
The act of assembly declares, that in cases where trustees have been appointed by last will and testament to execute any trust, and any person interested in the execution thereof shall shew that *436 it is necessary for the safety of those interested, that the trustees should give bond and security, the Chancellor may order them to do so; and if they shall fail to comply, to displace them. (o) The decree of the 5th of November, 1829, which required these trustees to give bond, was passed with the express consent of their solicitors. But, as no application has, as yet, been made by any person interested to force them to do so, the requisition of the decree may, in this respect, be allowed to stand over as regards Wayman, the trustee Stockett having given bond, until such an application shall be made.
It is, therefore, Ordered, that the said Henry Wayman be, and he is hereby continued as trustee, according to the will of the said Larkin Shipley, deceased.
After which, various other proceedings were had, and sundry other investments made; and the plaintiff Larkin Shipley having attained his full 'age, the case was submitted for a final decree and directions. When, on the 24th of January, 1838, it was determined that the words c issue of his body,’ in the devise to him, were words of purchase; so that he took only an estate for life; and the trustees were directed, as before, to make investments accordingly.

 Carpenter v. Heriot, 1 Eden, 341; Wycherley v. Wycherley, 2 Eden, 180.—

 Ex parte Hopkins, 3 P. Will. 155; Lempster v. Pomfret, Amb. 154; Lyons v. Blenkin, 4 Cond. Cha. Rep. 115. —

 Langston v. Olivant, Cooper’s Rep. 33.

 Brown v. Litton, 1 P. Will. 140; Trafford v. Boehm, 3 Atk. 444; Adye v. Feuilleteau, 1 Cox, 24 ; De Manneville v. Crompton, 1 Ves. & Bea. 359 ; Wilkes v. Steward, Cooper’s Rep. 6; Walker v. Symonds, 3 Swan. 63; Collis v. Collis, 2 Cond. Cha. Rep. 459.

 Anonymous, 1 Salk. 153; Carter v. Barnadiston, 1 P. Will. 518. —

 Curteis v. Candler, 6 Mad. 123.

 Sitwell v. Bernard, 6 Ves. 539; Bourke v. Ricketts, 10 Ves, 333.

 Hume v. Edwards, 3 Atk. 693 ; Nannock v. Horton. 7 Ves. 401; Sibley v. Perry, 7 Ves. 534; Franks v. Noble, 12 Ves. 485.

 Crickett v. Dolby, 3 Ves. 13; Chambers v. Goldwin, 11 Ves. 1.

 Webb v. Shaftesbury, 7 Ves. 481; Fearns v. Young, 10 Ves. 184; 2 Fonb. 176; Brocksopp v. Barnes, 5 Mad. 90.

 Franks v. Noble, 12 Ves. 490.

 Leech v. Leech, 1 Ch. Ca. 249; Brown v. Litton, 1 P. Will. 140; Trafford v. Boehm, 3 Atk. 448; Brooks v. Reynolds, 1 Bro. C. C. 183; Hancom v. Allen, 2 Dick. 498; Brown v. Yeale, 7 Ves. 50, note; Curteis v. Candler, 6 Mad. 123 ; David v. Frowd, 7 Cond. Cha. Rep. 8.

 Nicolson v. Wordsworth, 2 Swan. 370 ; 2 Fonb. 181.

 Walker v. Symonds, 3 Swan. 58; Winder v. Diffenderffer, ante 174,

 Buckworth v. Buckworth, 1 Cox, 80.

 Lyons v. Blenkin, 4 Cond. Cha. Rep. 120; Ex parte Skinner, 17 Com. Law Rep. 122.

 Wellesley v. Beaufort, 3 Cond. Cha. Rep. 10; 2 Fonb. 226.

 2 Lond. Jurist, 66.

 St. John v. St. John, 11 Ves. 531.

 Westmeath v. Westmeath, 4 Cond. Cha. Rep. 62.

 Butler v. Freeman, Amb. 302; Creuze v. Hunter, 2 Cox, 242; Lyons v. Blenkin, 4 Cond. Cha. Rep. 115.

 Ex parte Warner, 4 Bro. C. C. 101; Skinner v. Warner, 2 Dick, 779 ; De Manneville v. De Manneville, 10 Ves. 61; Whitfield v. Hales, 12 Ves. 492; Ball v. Ball, 2 Cond. Cha. Rep. 299; Wellesley v. Beaufort, 3 Cond. Cha. Rep. 1; The King v. De Manneville, 5 East. 221.
Pratt v. Pratt. — William Pratt, an infant of eleven years of age, by Christopher Cross Eouth, his uncle and next friend, on the 6th of February, 1773, filed his petition in thi3 court, in which he stated, that John Pratt, his father, had married Mary Buck, by whom he had issue, the petitioner his eldest son, and several other children; that she afterwards died seized in fee of divers lands, leaving the petitioner her eldest son and heir at law; that the petitioner’s father afterwards married Elizabeth Griffith; and on the 21st of November, 1770, made his last will, in which, among other things, he devised as follows, to wit: T bequeath unto my son William Pratt one negro girl named Beck; and it is my will and desire, that my beloved wife Elizabeth Pratt should have the bringing up of my said son William Pratt, and that he should live with her until he shall be of the age of twenty-one years, and that my said wife should have possession of my dwelling plantation until my aforesaid son William shall arrive at the age aforesaid. All the remainder of my personal estate, after paying my just and lawful debts, and the above legacies, I give and bequeath to be equally divided among my children. And I do hereby nominate and appoint my beloved wife Elizabeth Pratt executrix of this my last will and testament.’ That afterwards John Pratt, the petitioner’s father, died seized and possessed of other lands than were devised by the said will, which have descended to the petitioner his heir at law. That after the death of the testator, the said Elizabeth proved the will and took upon herself the execution thereof, and also the guardianship of the petitioner. That she hath been extremely remiss as executrix and guardian, whereby the estate of the testator hath been much wasted and embezzled; and the petitioner neglected and in want of the common necessaries of life; nor hath she paid the least attention to his education. That such hath been her conduct since the death of the testator, which the petitioner hopes there may be no necessity particularly to expose, that she has lost all the respect of her neighbours and acquaintances, and by them is esteemed a woman of an infamous character. That she had endeavoured secretly to convey away sundry negro slaves and other personal estate of the testator with a view to defraud the petitioner and others, *430 the children of the testator, and to deprive her surety for the due execution of the ■will of the means to counter secure himself, he having on petition obtained an order from the County Court to possess himself of the estate of the testator in her hands. From all which the petitioner was truly apprehensive of his suffering greatly with respect to the profits of his real estate for which there was no security; and that his education would be totally neglected. Whereupon he prayed, that, as the said Elizabeth had disqualified herself to be his guardian, he might be removed from her custody, and have another guardian assigned for him, or have such other relief as might seem meet and agreeable to justice. To this petition there was subjoined an affidavit of the next friend of the truth of its .allegations, made before a justice of the peace.
6tk February, 1773. — Eden, Chancellor. — Ordered, that the same Elizabeth Pratt appear in the High Court of Chancery on Monday, the twenty-second day of this instant, February, to shew cause, if she hath any, why the said William Pratt, with his estate, should not be removed from the custody and guardianship of the same Ellizabeth, and some other guardian be assigned for him. And that the said Christopher C. Routh also appear at the same time and place, and bring with him the aforesaid William Pratt; and then and there produce testimony to prove and establish the several allegations of the said petition; and that a copy of the same petition and this order be served on the same Elizabeth Pratt five days next preceding the said twenty-second day of this instant, February.
Copies having been served as directed, the case was again brought before the court.
17th Jlpril, 1773. — Eden, Chancellor. — Upon consideration of the said petition; and the same Elizabeth Pratt having been properly served with a copy of the said petition and the order thereon; and the said Christopher C. Routh being present with the said William Pratt, and having fully proved and established the several allegations of the said petition. It is hereby Ordered and Decreed, that the said William Pratt, with his estate, be removed from the custody and guardianship of the same Elizabeth Pratt, and that the custody, guardianship and care of the same William Pratt, with his estate, he and is hereby committed to the same Christopher Cross Routh, the said Christopher C. Routh giving security to account for the profits of the estate of the said William Pratt according to such orders as shall from time to time be made by the Chancellor of this province for the time being, and to the same William Pratt when he shall arrive at the age of twenty-one years, and his executors and administrators, deducting thereout what may be sufficient for the maintenance and education of the same William Pratt, without diminution of the principal; and conduct himself by and pursue and keep the orders and directions of the acts of assembly of this province relative to guardians who are either appointed by the respective county courts of this province, or therein chosen by orphans, where the same shall not be inconsistent with or repugnant to the orders from time to time of the Chancellor for the time being.
After which C. C. Routh gave bond as required, &c. — Chancery Proceedings, lib. W. K. No. 1, fol. 134.

 The King v. Soper, 5 T. R. 278 ; The King v. Hopkins, 7 East. 579; Strangeways v. Robinson, 4 Taunt. 509 ; Ex parte Hopkins, 3 P. Will. 155; Lyons v. Blenkin, 4 Cond. Cha. Rep. 124; Prather v. Prather, 4 Desau. 39; 2 Lond. Jurist, 76.

 Beaufort v. Berty, 1 P. Will. 705; Ex parte Hopkins, 3 P. Will. 154; Powel v. Clever, 2 Bro. C. C. 510; Butler v. Butler, 3 Atk. 60; Creuze v. Hunter, 2 Cox, 242; Lyons v. Blenkin, 4 Cond. Cha. Rep. 124.

 Lyons v. Blenkin, 4 Cond. Cha. Rep. 124.

 2 Lond. Jurist, 66.

 Jervoise v. Silk, Cooper’s Rep. 52; Haley v. Bannister, 4 Mad. 275; Wellesley v. Beaufort, 3 Cond. Cha. Rep. 14.

 Uvedale v. Ettrick, 2 Cha. Ca. 131.

 Hibbard v. Lambe, Amb. 309; Bennet v. Honywood, Amb. 710.

 Lake v. De Lambert, 4 Ves. 593,

 Buchanan v. Hamilton, 5 Ves. 722.

 Millard v. Eyre, 2 Ves. jun. 94.

 Ex parte Phelps, 9 Mod. 357.

 Uvedale v. Ettrick, 2 Cha. Ca. 330.—

-v. Roberts, 1 Jac. & Walk. 251.

 Webb v. Shaftesbury, 7 Ves. 487; Bayley v. Mansell, 4 Mad. 226; Southwell v. Ward, 5 Cond. Cha. Rep. 409.—

 1785, ch. 72, s. 4.

 Rex v. Simpson, 3 Burr. 1467.

 O’Keeffe v. Calthorpe, 1 Atk. 18; Crewe v. Dicken, 4 Ves. 100; Chalmer v. Bradley, 1 Jac. & Walk. 68.

 1785, ch. 72, s. 10.